UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

ANTHONY J. TESTA,

                Plaintiff,

     v.

JACK HOBAN, *et al.*

                Defendants.

Civ. Action No. 17-1618-BRM-DEA

**OPINION**

**MARTINOTTI, DISTRICT JUDGE**

     Before this Court are five motions to dismiss the Complaint of *pro se* Plaintiff Anthony J. Testa ("Testa") as Executor for the Estate of Rose Marie A. Testa (the "Estate") and one motion for judgment on the pleadings. Testa[1] brings this action on behalf of the Estate against Defendants Jack Hoban ("Hoban"), Joseph Achacoso ("Achacoso"), numerous federal agencies ("Federal Defendants"), the police departments and mayors of several New Jersey municipalities ("Municipal Defendants"), and several insurance companies (collectively, "Defendants")[2] for

---

[1] The Court uses "Testa" to refer to him both in his capacity as Executor and as an individual insofar as he is personally involved in allegations in the Complaint.

[2] Plaintiff brings claims against Hoban; Achacoso; the Federal Bureau of Investigation ("FBI"); the Department of Justice ("DOJ"); the United States Secret Service ("USSS"); the Department of Homeland Security ("DHS"); the Central Intelligence Agency ("CIA"); the National Security Agency ("NSA"); the Township of Union Police Department ("Union PD") and Mayor Manuel Figuieredo (collectively, "Union Defendants"); the Toms River Police Department ("Toms River PD") and Mayor Thomas Kelaher (collectively, "Toms River Defendants"); the City of Newark Police Department and Mayor Ras Baraka ("Newark Defendants"); the Township of Colts Neck Police Department ("Colts Neck PD") and Mayor Thomas Orgo (collectively, "Colts Neck Defendants"); the Kenilworth Police Department ("Kenilworth PD") and Mayor Anthony DeLuca

1

allegedly murdering his mother, Rose Marie A. Testa, covering up the murder, repeatedly and systematically harassing Testa through activities including illegal surveillance, interference with Testa's educational, medical, business, and personal relationships, tampering with Testa's mail, illegal detention, and obstruction of Plaintiff's attempts to pursue litigation.

The substance of the six motions are: (1) Insurance Defendants' Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 28); (2) Union Defendants' Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) (ECF No. 38); (3) Point Pleasant Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 41); (4) Manchester Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 42); (5) Kenilworth Defendants' Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 52); and (6) Bernards Defendants' Motion to Dismiss the

---

(collectively "Kenilworth Defendants"); the City of Atlantic City Police Department and Mayor Donald A. Guardian ("Atlantic City Defendants"); the Township of Woodbridge Police Department and Mayor John McCormac ("Woodbridge Defendants"); the Township of Wall Police Department and Mayor Ann Marie Conte ("Wall Defendants"); the Borough of Point Pleasant Beach Police Department ("Point Pleasant PD") and Mayor Stephen D. Reid (collectively, "Point Pleasant Defendants"); the Township of Bernards Police Department ("Berndards PD") and Mayor John Carpenter (collectively, "Bernards Defendants"); the Spring Lake Police Department and Mayor Jennifer Naughton ("Spring Lake Defendants"); the Township of Manchester Police Department ("Manchester PD") and Mayor Ken Palmer (collectively, "Manchester Defendants"); Prudential Insurance Company of America, Pruco Life Insurance Company, Pruco Life Insurance Company of New Jersey, Prudential Annuities, Inc. (improperly pled as "Prudential Annuities"), Prudential Annuities Life Assurance Corporation (improperly pled as Prudential Annuities Life Insurance Corporation), Prudential Legacy Insurance Company of New Jersey, and Prudential Financial, Inc. (collectively, "Prudential Defendants"); MetLife, Inc., Metropolitan Life Insurance Company, MetLife Insurance Company USA, and Metropolitan General Insurance Company (collectively, "MetLife Defendants"; jointly with Prudential Defendants, "Insurance Defendants"); the Treasurer of the State of New Jersey; and Doe defendants, "Doe 'Arrogant Bastard Ale'" and "Doe 'The Last Straw.'"

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (ECF No. 58) (collectively, "Moving Defendants").

For the reasons set forth below, Moving Defendants' motions (ECF Nos. 28, 38, 41, 42, 52, and 58) are **GRANTED**.

I. **PROCEDURAL AND FACTUAL BACKGROUND**[3]

For the purposes of these motions, the Court accepts the factual allegations in the Complaint as true. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Initially, much of the ninety-seven-page Complaint is unclear, but to the extent its allegations can be discerned by the Court, Testa accuses Defendants generally of a far-reaching and all-encompassing conspiracy to murder Rose Marie A. Testa, cover up that crime, and obstruct Testa's efforts to investigate his mother's death or go about his daily life. Much of the content of the Complaint is disjointed, incoherent, and far-fetched.[4]

---

[3] Testa is the Plaintiff in a very similar lawsuit, *Testa v. Hoban*, 16-CV-0055 ("*Testa I*"), which is also before this Court. On September 14, 2016, the Honorable Freda L. Wilson, U.S.D.J. granted eleven motions to dismiss filed by all defendants in the case other than Hoban and denied a motion to intervene on behalf of the Estate. (*Testa I*, ECF No. 114.) This lawsuit appears to assert the claims Testa sought to bring via his motion to intervene. On May 30, 2017, the undersigned denied Testa's motion to reconsider Judge Wolfson's decision. (*Testa I*, ECF No. 152.) A more detailed factual and procedural history of *Testa I* can be found in the Court's Opinion of May 30, 2017. (*Testa I*, ECF No. 151.)

[4] Plaintiff attaches hundreds of pages of exhibits to his Complaint, including several thousand paragraphs purported to be evidence. The Court does not construe these exhibits to be allegations in their own right. Accordingly, because a court ruling on a motion to dismiss, pursuant to Rule 12(b)(6), looks to the sufficiency of the pleadings contained in the complaint, the Court will only consider the exhibits attached to the Complaint insofar as the Complaint itself contains allegations regarding the exhibits' contents. *See Phillips*, 515 F.3d at 233; *see also Mele v. Federal Reserve Bank of New York*, 359 F.3d 251, 257 (3d Cir. 2004) ("In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings").

Testa generally alleges that various Defendants conspired to murder his mother, and later used various surveillance techniques to interfere with Testa's effort to uncover the conspiracy, as well as harass and intimidate him. (Compl. (ECF No. 1) at 3.)[5] Rose Marie A. Testa died on November 19, 2012, and her cause of death was determined to be a heart attack. (*Id.* ¶¶ 3, 5.) The Manchester PD entered Rose Marie A. Testa's residence, identified her body, and notified Testa of his mother's death. (*Id.* ¶ 4.) Testa alleges there is "physical evidence at the scene of [his mother's residence] which contradicts the theory of death postulated by the [Manchester PD]." (*Id.* ¶ 14.) Among the evidence Testa alleges indicates his mother was murdered were "a blood trail leading away from the corpse" and "a bloody paper towel located in close proximity to the corpse." (*Id.* ¶¶ 102-03.) Testa learned of his mother's death while at the dojo of Hoban.[6] (*Id.* ¶ 66.)

Testa contends, more than two years later, in September 2014, the Colts Neck PD issued a ticket to him for driving without having renewed his driver's license. (*Id.* ¶ 19.) He alleges Hoban, while "operating under federal color of law," directed the Colts Neck PD to issue the ticket. (*Id.* ¶ 23.) He also claims Hoban and Achacoso had an undisclosed "involvement" in Testa's hearing at the Municipal Court of Colts Neck. (*Id.* ¶ 26.) Their involvement led the Municipal Court of Colts Neck to issue a bench warrant, which in turn led the Toms River PD to arrest him on January 11, 2015, after which he was detained for a week in county jail. (*Id.* ¶ 28.) Testa alleges Hoban, Achacoso, and other individual "Doe" defendants took actions that led to Testa receiving tickets from the Kenilworth PD. (*Id.* ¶¶ 49-52.) Testa alleges federal agencies used "surveillance

---

[5] Portions of the Amended Complaint are not formatted in numbered paragraphs. The Court cites to these by page number.

[6] Testa does not identify Hoban's occupation or his relationship to Testa, but the Court infers from the Complaint that Hoban was Testa's martial arts instructor.

4

technology" to influence to the issuance of the tickets from Colts Neck, Toms River, and Kenilworth. (*Id.* ¶ 55.) He further claims Hoban and Achacoso were "involved in the operation of surveillance technologies used at the hearings held in the municipal courts of Colts Neck, Toms River, and Kenilworth regarding tickets issued [to Testa]." (*Id.* ¶¶ 63-64.) Testa also alleges Hoban, Achacoso, and other Defendants "prepared or edited" materials Testa used while attending law school in order to intimidate him and make him believe he had murdered his mother. (*Id.* ¶¶ 93-99.)

As to the Insurance Defendants, Testa asserts claims related to the following instruments: (1) Prudential Policy 99 090 864 (*Id.* ¶¶ 1799-1804); (2) Prudential Policy 23 029 553 (*Id.* ¶¶ 1805-07); (3) Prudential Annuity 99 708 474 (*Id.* ¶¶ 1808-09); MetLife Policy 810 202 466A (*Id.* ¶¶ 1837-40); MetLife Policy 2341788 (*Id.* ¶ 1841); MetLife Policy 736438155A (*Id.* ¶¶ 1842-43); MetLife Policy 0029907 (*Id.* ¶ 1844); MetLife TCA Account 4055074731 (*Id.* ¶¶ 1845-48). Testa claims he informed Insurance Defendants his mother may have been murdered and asked them to investigate, including by exhuming his mother's body, but they failed to do so. (*See id.* ¶¶ 1833-36, 1866, 1881-85.) Testa alleges the policies were not paid to the Estate as required but instead reported to the State of New Jersey as abandoned property.[7] (*Id.* ¶¶ 1825-27, 1875-80.) He alleges Hoban drafted several letters from Insurance Defendants and edited information on public websites to prevent Testa from collecting on the insurance policies that named him or the Estate as beneficiaries. (*Id.* ¶¶ 2000, 2062-65.)

---

[7] As far as Testa's efforts to collect on the policies are concerned, Insurance Defendants point out the exhibits attached to the Complaint suggest Testa failed to timely submit required forms, which led Insurance Defendants to escheat the policy proceeds to the State of New Jersey. (ECF No. 28-1 at 8-9.)

5

Testa seeks an order from this Court to compel "a law enforcement agency competent for the task that can demonstrate to the Court that it does not have a conflict of interest" to "process the scene" at his mother's former residence. (*Id.* ¶ 837.) He also seeks various findings against Defendants for negligence, fraud, tortious interference with his relationship with his mother, obstruction of justice, and harassment. (*Id.* ¶¶ 841-50.) Testa seeks alternative sanctions in the event Defendants have staged Rose Marie A. Testa's death by presenting Testa with the corpse of an unknown person. (*Id.* ¶¶ 858-69.)

On November 7, 2016, Testa filed the Complaint in the United States District Court for the Southern District of New York. On February 7, 2017, the Honorable J. Paul Oetken, U.S.D.J. issued an order to show cause as to why the case should not be transferred to this Court in view of the case already pending before this Court. (ECF No. 9.) Testa filed a brief in support of the case being venued in the Southern District of New York (ECF No. 22) and Federal Defendants filed a letter brief in support of transfer to the District of New Jersey (ECF No. 21). On March 1, 2017, Judge Oetken ordered the case transferred to this Court. (ECF No. 23.) The pending motions followed. (ECF Nos. 28, 38, 41, 42, 52, and 58.) Testa opposed Insurance Defendants' Motion. (ECF No. 51.) He sought and was granted several extensions to oppose the other motions. (ECF Nos. 31, 35, 39, 43, 44, 47, 53, 55, 56, 59, 60.) The Court informed Testa he would receive no additional extensions and his failure to comply with the briefing schedule in the Court's Order of July 31, 2017, would result in the pending Motions to be considered unopposed. (ECF No. 60.) On August 14, 2017, Testa sought an additional extension. (ECF No. 61.) The Court denied this request. (ECF No. 62.)

## II. LEGAL STANDARDS

### A. Motion To Dismiss

With the exception of Union Defendants, who move for a judgment on the pleadings pursuant to Rule 12(c) (ECF No. 38), Moving Defendants move to dismiss the Complaint for failure to state a claim, pursuant to Rule 12(b)(6) (ECF Nos. 28, 41, 42, 52, and 58). Insurance Defendants also move on the grounds the Court lacks subject matter jurisdiction, pursuant to Rule 12(b)(1). (ECF No. 38.) "Caution is necessary because the standards governing the two rules differ markedly, as Rule 12(b)(6) provides greater procedural safeguards for plaintiffs than does Rule 12(b)(1)." *Davis v. Wells Fargo*, 824 F.3d 333, 348-49 (3d Cir. 2016).

#### 1. Federal Rule of Civil Procedure 12(b)(1)

"A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis*, 824 F.3d at 346. A facial attack "challenges the subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Id*. (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'" *Id*. (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). A "factual challenge allows a court [to] weigh and consider evidence outside the pleadings." *Id*. (citation omitted). Thus, when a factual challenge is made, "no presumptive truthfulness attaches to [the] plaintiff's allegations." *Id*. (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Rather, "the plaintiff will have the burden of proof that jurisdiction does in fact exist," and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348-49 (collecting cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id*. at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n, Inc.*, 816 F.2d 895, 899 (3d Cir. 1987)). "In this vein, when a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id*. (citing *Mortensen*, 549 F.2d at 892 (holding that dismissal under Rule 12(b)(1) would be "unusual" when the facts necessary to succeed on the merits are at least in part the same as must be alleged or proven to withstand jurisdictional attacks)). These cases make clear that "dismissal via a Rule 12(b)(1) factual challenge to standing should be granted sparingly." *Id*.

Here, Insurance Defendants are asserting a facial 12(b)(1) challenge. Therefore, the Court considers the allegations in the light most favorable to Testa. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen*, 549 F.2d at 891.

### 2. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Philips*, 515 F.3d at 228. "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* This "plausibility standard" requires the complaint allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than 'an unadorned, the defendant-harmed-me accusation" must be pled; it must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

      **B.**     **Federal Rule of Civil Procedure 12(c)**

Federal Rule of Civil Procedure 12(c) provides: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

"The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6)." *Newton v. Greenwich Twp.*, 2012 WL 3715947, at *2 (D.N.J. Aug. 27, 2012); *see also Muhammad v. Sarkos*, 2014 WL 4418059 (D.N.J. Sept. 8, 2014) ("Where a defendant's motion is one for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), it is treated under the same standards as a Rule 12(b)(6) motion where it alleges that a plaintiff has failed to state a claim.") (citing Turbe v. Gov't of V.I., 938 F.2d 427, 428 (3d Cir. 1991); *Gebhart v. Steffen*, 2014 WL 3765715, at *2 (3d Cir. Aug. 1, 2014)).

"In deciding a Rule 12(c) motion, the court does not consider matters outside the pleadings" and must "view[] the complaint 'in the light most favorable to the plaintiff' . . . [to determine whether] 'there is no material issue of fact to resolve, and [the moving party] is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 257 (quoting *Leamer v. Fauver*, 288 F.3d 532, 534 (3d Cir. 2002)); *see also Phillips*, 515 at 228 (3d Cir. 2008) (pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]").

### III. DECISION

#### A. Insurance Defendants' Motion to Dismiss Pursuant to Rule 12(b)(1)

Insurance Defendants move to dismiss the claims against them pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing this Court lacks subject matter jurisdiction over those claims, pursuant to 28 U.S.C. §§ 1331 and 1332. "The federal courts are under an independent obligation to examine their own jurisdiction." *United States v. Hays*, 515 U.S. 737, 742 (1995). A plaintiff bears the burden of establishing jurisdiction is proper. *Kokkenen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Pursuant to 28 U.S.C. § 1331, "[t]he district courts shall have original

jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Pursuant to 28 U.S.C. § 1332(a), "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between (1) Citizens of different States."

In his Opposition to Insurance Defendants' Motion, Testa reiterates many of the claims in the Complaint, including the unexplained allegation that Hoban was somehow behind Testa's problems with various municipal police departments. (Br. in Opp. (ECF No. 51) at 7-9.) In his 151-page Brief,[8] Testa cites numerous federal statutes he argues could provide bases for claims against Insurance Defendants. He also alleges a RICO conspiracy against Insurance Defendants. Finally, in his opposition to Insurance Defendants' Motion to Dismiss, Testa seeks the Court's leave to amend the Complaint to assert these claims.[9] (*Id.* at 43, 147.)

Here, the Court construes the claims against Insurance Defendants to consist of alleged breaches of contract, *e.g.* Insurance Defendants' failure to investigate Rose Marie A. Testa's death and pay the proceeds of the policies, and fraud, *e.g.* Hoban's alleged manipulation of correspondence to interfere with Testa's and the Estate's rights to collect on the policies. (*See* ECF No. 1 ¶¶ 1825-27, 1833-36, 1866, 1881-85, 1875-80, 2000, 2062-65.) Notwithstanding Testa's attempt to state a claim, there are no facts alleged to support these unorthodox, far-fetched claims

---

[8] Though Testa exceeded the 40-page limit of Local Civil Rule 7.2(b) by more than 90 pages, the Court did review and consider the arguments contained therein.

[9] On July 11, 2017, Testa filed a Motion to Amend the Complaint (ECF No. 56) seeking to join his cable television provider as a defendant, which the Honorable Douglas E. Arpert, U.S.M.J. denied (ECF No. 63).

11

and the Complaint does not assert a claim pursuant to the Constitution or any federal law.[10] As for Testa's numerous references to federal statutes in his Opposition, "the [C]omplaint may not be amended by the briefs in opposition to a motion to a motion to dismiss." *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.3d 173 (3d Cir. 1988). While courts must construe a *pro se* plaintiff's claims liberally, "a litigant is not absolved from complying with . . . the federal pleading requirements merely because s/he proceeds *pro se*." *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010).

The Court finds it does not have original jurisdiction over the claims against Insurance Defendants, because there is no federal question jurisdiction pursuant to 28 U.S.C. § 1331. Testa has not pled diversity jurisdiction pursuant to 28 U.S.C. § 1332, nor has he refuted Insurance Defendants' argument that there is no diversity jurisdiction. *See Kokkenen*, 511 U.S. at 377 (finding a plaintiff bears the burden of establishing jurisdiction is proper). However, "[u]nder [28 U.S.C. §] 1367, a district court has authority to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claim[s]" before the court. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003). Supplemental jurisdiction is appropriate when "there is a common nucleus of operative fact' and whether the claims are part of the same case or controversy under Article III.'" *Id.* (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). Here, Testa's claims against Insurance Defendants arise from his allegations his mother was murdered or that her death was staged so as to make him believe she was murdered. (ECF No. 1 ¶¶ 1833-36, 1866, 1881-85.) The Court finds these allegations have "a

---

[10] The Complaint includes dozens of pages of references to federal statutes, such as 15 U.S.C. §§ 1512 and 1513, which pertain to witness tampering and retaliating against a witness, victim, or informant, respectively. But the Complaint lacks allegations of specific acts by specific defendants.

common nucleus of operative fact" with Testa's federal claims against the other defendants,[11] and "the claims are part of the same case or controversy." *Gibbs*, 383 U.S. at 725. Therefore, the Court will exercise supplemental jurisdiction over Testa's claims against Insurance Defendants at this time.

Insurance Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) fails on this ground.

### B. Motions to Dismiss Pursuant to Rule 12(b)(6)

Moving Defendants argue the Complaint fails to allege claims against them with the required specificity and therefore fails to state a claim.[12] First, Union Defendants,[13] Point Pleasant Defendants, Manchester Defendants, and Bernards Defendants point out the Complaint includes no allegations against the mayors of those municipalities, who are named as defendants. (ECF No. 38 at 3-4; ECF No. 41-3 at 7; ECF No. 42-2 at 9; ECF No. 58-1 at 5.) Accordingly, Testa has failed to plead "a short and plain statement of the claim showing that the pleader is entitled to relief" against these Defendants. *See* Fed. R. Civ. P. 8(a)(2), (3); *see Binsack v. Lackawanna Cty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (affirming dismissal of a complaint that was "voluminous"

---

[11] Testa raises federal claims against Moving Defendants as well as non-moving defendants, many of whom have not yet appeared in the case. As stated in the Order accompanying this Opinion, Testa shall show cause why the case should not be dismissed for failure to serve defendants pursuant to Federal Rule of Civil Procedure 4. As always, the Court may *sua sponte* examine its subject matter jurisdiction at any stage of the litigation and reserves its right to do so here. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002); *Emp'rs Ins. of Wausau v. Crown Cork & Seal Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1990).

[12] The Court construes Testa's claims that various municipal officials and police departments have violated his rights under the United States Constitution as having been brought pursuant to 42 U.S.C. § 1983.

[13] While Union Defendants move for a judgment on the pleadings pursuant to Rule 12(c), the Court analyzes their arguments under the same standard as a motion to dismiss pursuant to Rule 12(b)(6). *See Newton*, 2012 WL 3715947, at *2 ("The difference between a motion to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) is only a matter of timing and the Court applies the same standard to a Rule 12(c) motion as it would to a Rule 12(b)(6).").

but "vague and ambiguous" and which "failed to provide a short and plain statement of each claim against each defendant").

As to Union PD, Point Pleasant PD, Kenilworth PD, and Bernards PD, the Complaint likewise fails to provide a short and plain statement of the claims against those parties. The Complaint does not include any specific allegations regarding Union Defendants, Point Pleasant Defendants, Kenilworth Defendants, and Bernards Defendants. The Complaint alleges Testa received tickets from the Kenilworth PD (ECF 1 ¶¶ 49-52), but includes no facts to connect the tickets to the sprawling conspiracy Testa alleges. The Complaint does not include factual allegations against Union Defendants, Point Pleasant Defendants, or Bernards Defendants.

While Testa makes some specific allegations against Insurance Defendants, dismissal is nonetheless proper. Testa claims Insurance Defendants failed to investigate his mother's death after he informed them he believed she was murdered. (ECF No. 1 ¶¶ 1833-36, 1866, 1881-85.) He cites no authority for the premise that insurers who have received a decedent's death certificate are obliged to investigate the death certificate's veracity due to a beneficiary's unsubstantiated allegation. Testa also alleges Hoban drafted several letters from Insurance Defendants and edited information on public websites to prevent Testa from collecting on the insurance policies that named him or the Estate as beneficiaries. (*Id.* ¶¶ 2000, 2062-65.) But he does not provide any plausible basis for his assertion that Hoban, his martial arts instructor, is in any way affiliated with Insurance Defendants. Dismissal of the claims against the Insurance Defendants is appropriate because Testa "ha[s] not nudged [his] claims across the line from conceivable to plausible." *See Twombly*, 550 U.S. at 570.

The allegations against Manchester Defendants are somewhat more specific but nonetheless fall short of pleading requirements. Testa alleges Manchester PD identified his

mother's body and notified him of her death. (*Id.* ¶ 4.) He further contends there is "physical evidence at the scene of [his mother's residence] which contradicts the theory of death postulated by the [Manchester PD]." (*Id.* ¶ 14.) Specifically, he claims Manchester PD failed to notify "a blood trail leading away from the corpse" and "a bloody paper towel located in close proximity to the corpse." (*Id.* ¶¶ 102-03.) Nevertheless, the allegations against Manchester Defendants are speculative and confounding. Beyond his all-encompassing claims against all Defendants, Testa does not explain how or why Manchester PD would perpetrate or participate in a conspiracy to murder his mother or to cover up that crime. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 908 (3d Cir. 1997) (finding a court "need not accept 'bald assertions' or 'legal conclusions' contained in the complaint"). The Complaint does not state a plausible claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Therefore, Insurance Defendants', Point Pleasant Defendants', Manchester Defendants', Kenilworth Defendants' and Bernards Defendants' Motions to Dismiss Pursuant to Rule 12(b)(6) (ECF Nos. 28, 41, 42, 52, and 58) are **GRANTED** and the claims against them are **DISMISSED**.

## C. Motion for a Judgment on the Pleadings Pursuant to Rule 12(c)

For the reasons set forth above, Testa has failed to set forth allegations sufficient to state a claim and therefore, Union Defendants are entitled to judgment as a matter of law. Therefore, Union Defendants' Motion for a Judgment on the Pleadings (ECF No. 38) is **GRANTED**.

## IV. CONCLUSION

For the foregoing reasons, Moving Defendants' motions (ECF Nos. 28, 38, 41, 42, 52, and 58) are **GRANTED**. Testa shall have fourteen days to amend the Complaint to cure the

deficiencies therein. If he fails to do so within that time, the claims against Moving Defendants shall be **DISMISSED WITH PREJUDICE**.


**Date: January 30, 2018** */s/ Brian R. Martinotti*
   **HON. BRIAN R. MARTINOTTI**
   **UNITED STATES DISTRICT JUDGE**